**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-20364-ALTMAN**

**RAHUL BAGGA**,

*Plaintiff*,

*v.*

**ROYAL CARIBBEAN CRUISES LTD.**,

*Defendant*.
_________________________________________/

## ORDER GRANTING MOTION TO DISMISS

Our Plaintiff, Rahul Bagga, has sued Royal Caribbean Cruises Ltd. ("RCCL"), asserting claims of negligent maintenance, negligent failure to warn, and negligent design. *See generally* Complaint [ECF No. 1]. RCCL has moved to dismiss this action "because the Ticket Contract between [Bagga] and RCCL contains a forum selection clause that requires all suits for personal injuries arising out of the subject cruise to be litigated, if at all, in and before the Courts of England and Wales." Motion to Dismiss (the "Motion") [ECF No. 13] at 1. The Motion is fully briefed and ripe for adjudication. *See* Response in Opposition to the Motion (the "Response") [ECF No. 28]; Reply in Support of the Motion (the "Reply") [ECF No. 29]. After careful review, we **GRANT** the Motion.

### THE FACTS

Bagga is "a resident and citizen of Canada." Complaint ¶ 2. "On January 22, 2025, [Bagga] was a fare paying passenger aboard the ICON[.]" *Id.* ¶ 11. "At all material times, including January 22, 2025, [Bagga] was participating in an onboard game for passengers sponsored and organized by RCCL, specifically the 'Crazy Quest Adult Scavenger Hunt' [the 'Scavenger Hunt'] in the Absolute Zero Ice Rink on Deck 3 of the ICON." *Id.* ¶ 12. "[W]ithin the rink, there was a wet, foreign and/or transitory substance on the walking surface[.]" *Id.* ¶ 13. During the Scavenger Hunt, an RCCL crewmember

"called for passenger participants to bring up items to the stage in order to receive points[.]" *Id.* ¶ 14. Bagga walked to the stage as instructed, but "slipped on the wet area of the walking surface" of the rink. *Ibid.* Bagga, "feeling pain but initially not knowing the full extent of his injury, limped back to his designated area for the game, slipped on an additional wet area and thereby fell again." *Ibid.* As a result of his falls, Bagga "was injured in and about his body and extremities, including sustaining a torn anterior cruciate ligament and meniscus." *Id.* ¶ 15.

## THE LAW

*Forum non conveniens* "is an ancient common law doctrine that permits a court to decline jurisdiction over a case, even if personal jurisdiction and venue are otherwise proper, when there is a more convenient forum for the case to be litigated." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1302 n.4 (11th Cir. 2002); *see also Boyd v. Deadwood Tobacco Co.*, 2024 WL 940822, at *2 (S.D. Fla. Mar. 5, 2024) (Altman, J.) ("Under the doctrine of *forum non conveniens* [ ], a district court has the inherent power to decline to exercise jurisdiction even when venue is proper." (cleaned up)). In a typical *forum non conveniens* case, "[t]he moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001).

"Where there is a valid forum-selection clause, however, the *forum non conveniens* analysis is modified in three consequential ways. First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that dismissal for *forum non conveniens* is unwarranted. Second, a court should not consider arguments about the parties' private interests and must deem the private-interest factors to weigh entirely in favor of the preselected forum. Third, a court in the contractually selected venue should not apply the law of

the transferor venue to which the parties waived their right, and this in turn may affect the public-interest considerations." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1086 (11th Cir. 2024).

As a result of these modifications, "the Supreme Court has said that the existence of a valid and enforceable forum-selection clause is essentially dispositive in the *forum non conveniens* analysis." *Ibid.* (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–64 (2013)); *see also GDG Acquisitions, LLC v. Government of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (noting that "an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis).

"A court may 'consider matters outside the pleadings if presented in proper form by the parties' in ruling on a motion to dismiss for *forum non conveniens*." *McGregor v. VP Recs.*, 2017 WL 2833444, at *3 (S.D. Fla. June 30, 2017) (Bloom, J.) (quoting *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001) (Gold, J.)); *see also Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1346 (11th Cir. 2021) (holding that an Italian attorney's affidavit was properly considered on motion to dismiss for *forum non conveniens*). A court may also consider exhibits attached to a motion to dismiss, and "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

## ANALYSIS

RCCL asks us to dismiss this case "based on the doctrine of *forum non conveniens* pursuant to a forum selection clause in the applicable Canada Cruise Ticket Contract ('Ticket Contract') accepted by [Bagga] prior to the sailing." Motion at 2. According to RCCL, the Ticket Contract's forum-selection clause requires all suits for personal injuries arising out of the subject cruise to be litigated, if at all, in and before the Courts of England and Wales. *Id.* at 2. RCCL has provided a copy of the Ticket Contract, which includes the following forum-selection clause:

> ALL DISPUTES, CLAIMS OR OTHER MATTER OF ANY DESCRIPTION ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY RELATED

> OR INCIDENT TO THIS AGREEMENT, THE CRUISE, CRUISETOUR, LAND TOUR OR TRANSPORT (INCLUDING A CLAIM FOR PERSONAL INJURY, ILLNESS OR DEATH OF A GUEST) MUST BE LITIGATED, IF AT ALL, IN AND BEFORE THE COURTS OF ENGLAND AND WALES, TO THE EXCLUSION OF ALL OTHER COURTS OR TRIBUNALS.

Ticket Contract [ECF No. 13-2] at 4.

Bagga's Response doesn't dispute that he entered into the Ticket Contract, argue that the Ticket Contract is invalid, or claim that the Ticket Contract didn't contain the relevant forum-selection clause. *See generally* Response; *see also* Reply at 2 ("Plaintiff's Response in Opposition [ ] does not dispute that he accepted the Ticket Contract during online check-in, does not dispute that the Ticket Contract's forum selection clause designating the Courts of England and Wales was reasonably communicated to him, and does not allege fraud or overreaching in the clause's formation.").[1] Instead, Bagga argues that we should override the forum-selection clause because litigating in England and Wales would be inconvenient for him and may limit his potential recovery. *See* Response at 2 ("While the [C]ourts of England and Wales are no doubt competent to adjudicate civil disputes in general, the forum selection clause at issue requires a Canadian citizen and resident not merely to litigate in a country foreign to him, under a foreign body of law, but also to cross the Atlantic Ocean to litigate his claims."). We're not persuaded.

---

[1] Bagga's Complaint initially alleges that, "in the operative ticket contract, RCCL requires fare-paying passengers, such as [Bagga], to bring any lawsuit against it arising out of injuries or events occurring on the cruise voyage in this federal judicial district." Complaint at 7. But RCCL has provided a copy of the Ticket Contract—which contains a forum-selection clause requiring disputes to be litigated in the Courts of England and Wales. *See* Ticket Contract at 4. And, as we've said, "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling*, 811 F.3d at 1277. In any event, Bagga appears to concede that he was mistaken in his initial claim that the Ticket Contract contained a forum-selection clause requiring disputes to be litigated in this District because he completely abandons that argument in his Response. *See generally* Response.

## I. The Forum-Selection Clause

Under federal maritime law, "[f]orum selection clauses 'are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances.'" *Turner*, 9 F.4th at 1345 (quoting *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1235 (11th Cir. 2011)). "A plaintiff can defeat this presumption by showing that (1) the clause was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Ibid.* (cleaned up). Bagga invokes only the second and third exceptions.[2]

### a. Inconvenience

*First*, Bagga argues that litigating in the Courts of England and Wales would be inconvenient for him as a Canadian citizen. *See* Response at 3 ("In order to present even his own testimony in a hypothetical English or Welsh proceeding, [Bagga] would still have to travel in person across the Atlantic, incurring the associated air travel and hotel costs and visa procedures, or accept the suboptimal solution of a fully electronic and fully remote proceeding[.] . . . If he wished to present the testimony of other lay or expert witnesses in person, he would also have to make arrangements for and incur the costs of their travel to the United Kingdom."). But "a plaintiff seeking to establish that a forum selection clause is unenforceable due to inconvenience or unfairness bears a heavy burden of proof." *Turner*, 9 F.4th at 1345–46 (cleaned up). And a plaintiff relying on "inconveniences that were foreseeable at the time of contracting in order to meet this burden can prevail only by showing that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 1346 (cleaned up). Bagga hasn't met this heavy burden.

[2] Bagga doesn't argue that the forum-selection clause was "induced by fraud or overreaching" or that "enforcement of the clause would contravene public policy," *Turner*, 9 F.4th at 1345, so we won't consider the applicability of those exceptions here.

He doesn't argue that the inconvenience of litigating in the Courts of England and Wales was unforeseeable at the time of contracting *or* demonstrate that litigating his case in the Courts England and Wales would effectively deprive him of his day in court. *See generally* Response (silent as to foreseeability).

The Eleventh Circuit's decision in *Turner* is instructive. In that case, the Eleventh Circuit enforced an Italian forum-selection clause even though the plaintiff was a U.S. resident and the vessel had departed from a U.S. port. In so holding, the court found persuasive an affidavit from an Italian attorney explaining that the plaintiff could attend routine Italian proceedings remotely—thus obviating the plaintiff's concerns about the inconvenience of international travel. *See Turner*, 9 F.4th at 1346 ("Turner still has not met his burden of proving that pursuit of his claims in Italy would subject him to fundamental unfairness. The reason is basic: he has not established that he would have to travel to Italy in order to pursue his case. The [d]efendants produced an affidavit from an Italian attorney explaining that Turner would not be required to attend routine proceedings in person and that even for those events that required attendance, he could possibly either arrange for appointment of a special attorney to attend on his behalf or request that the event take place in the United States via international rogatory.").

So too here. RCCL has provided a declaration from an English solicitor explaining that Bagga can pursue his claims in the Courts of England and Wales, in large part, remotely. *See* Declaration of Milena Iyer ("Iyer Decl.") [ECF No. 13-12] ¶ 33 ("[A]s a matter of English procedural law, it is entirely possible, for [Bagga], or any [his] fact or expert witnesses (if necessary) to give their evidence in chief remotely, should they wish to do so[.]"). And RCCL has already consented to proceeding remotely for Bagga's convenience. *See* Reply at 5 ("RCCL has, moreover, expressly consented to remote proceedings, including remote presentation of witness testimony, and does not object to that format where appropriate."). Bagga doesn't rebut this line of argument—but simply says that proceeding

remotely would be "suboptimal" and that he'd prefer to "present his case in person before the judicial officer deciding his fate." Response at 3. His preference for in-person proceedings simply isn't sufficient to carry the "heavy burden" he bears in trying to overcome a valid forum-selection clause. *Turner*, 9 F.4th at 1346.[3]

Even if Bagga *couldn't* proceed remotely, however, he'd still have failed to show that litigating in the Courts of England and Wales would be so gravely difficult as to effectively deprive him of his day in court. As RCCL observes, "as a citizen and resident of Canada, [Bagga's] travel to Miami requires [an] international flight and similar transit time as travel to London. Neither forum is [Bagga's] home forum, and neither imposes a unique or extraordinary burden relative to the other." Reply at 4. And the other purported inconveniences Bagga identifies in his Response (the location of witnesses, the need to coordinate with foreign counsel, etc.) are just the ordinary consequences a plaintiff who agreed to a foreign forum-selection clause would face. *See Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 202 (11th Cir. 2019) ("Lebedinsky contends that circumstances—including the continued pain she suffered in the United States from her injury, her treatment in New York, fact witnesses located in New York, and MSC Cruises' connection to the United States—render the forum selection clause so inconvenient that it is unenforceable. But these circumstances are not the type of uncontemplated inconveniences that justify the invalidation of a forum selection clause.").

**b. Remedy**

*Second*, Bagga advances the flimsy argument that, because the Athens Convention imposes certain liability limitations, his "recovery would be subject to a foreign statutory liability regime materially *different* from that available under United States maritime law." Response at 2 (emphasis

[3] Bagga cites *Greco v. Nat'l Football League*, 2017 WL 11679599, at *2 (N.D. Tex. Mar. 30, 2017), for the proposition that "live testimony [is] far superior to video or telephone testimony." Response at 3. But this unpublished, magistrate judge's decision from the Northern District of Texas has nothing to say about the enforceability of forum-selection clauses, has no precedential value, and doesn't persuade us to ignore *Turner*'s endorsement of remote proceedings.

added). But Bagga's suggestion that his recovery under the Athens Convention might be *different* than his recovery under federal maritime law doesn't move the needle. Courts will not "invalidate a forum selection clause simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States." *Lebedinsky*, 789 F. App'x at 203 (cleaned up)). "Only remedies that are so inadequate that enforcement would be fundamentally unfair render a chosen forum inadequate." *Ibid.* (cleaned up).

Bagga hasn't even tried to show that his remedies under the Athens Convention are so inadequate that they fail to meet this unfairness standard. He doesn't tell us what damages he's incurred, explain the liability limitations imposed by the Athens Convention, or otherwise provide any calculation from which we could compare his potential remedies under federal maritime law to his potential remedies under the Athens Convention. *See generally* Response. That's not good enough—especially when it's his burden.

The Eleventh Circuit's decision in *Lebedinsky* demonstrates why Bagga's Athens Convention argument is fatally flawed. In *Lebedinsky*, the plaintiff argued that she'd incurred $750,000 in damages but would be limited to a recovery of $64,000 under the Athens Convention if the relevant forum-selection clause were enforced—and the Eleventh Circuit *still* held that this limitation on her potential recovery wasn't enough to render the parties' selection of Italy as a forum "fundamentally unfair." *Lebedinsky*, 789 F. App'x. at 202; *see also id.* at 203 ("[H]ere, the possibility of reduced recovery does not amount to fundamental unfairness, and the potential application of the Athens Convention cannot justify the forum selection clause's invalidation."). Bagga has done far less than Lebedinsky and therefore fails to show that his remedy under the Athens Convention would be so inadequate as to render the forum-selection clause unenforceable.

## II. *Forum Non Conveniens*

But that's not the end of our inquiry. Having established that the parties' forum-selection clause is enforceable, "we must now apply a modified *forum non conveniens* analysis and assess (1) whether an adequate alternative forum is available, (2) whether the public factors weigh in favor of dismissal, and (3) whether the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Boyd*, 2024 WL 940822, at *8 (cleaned up)). All three of these modified factors favor RCCL.

*First*, the Courts of England and Wales are an adequate alternative forum for this dispute. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("Plainly, the courts of England meet the standards of neutrality and long experience in admiralty litigation."). RCCL's English solicitor attests to the independence and fairness of the Courts of England and Wales and tells us that "many parties to maritime disputes choose to litigate in England and Wales as a neutral jurisdiction with a specialist Admiralty Court[.] . . . As a result, a vast number of personal injury disputes arising from onboard ships have been heard in the Courts of England and Wales over the years." Iyer Decl. ¶ 37. Bagga never argues that the Courts of England and Wales *wouldn't* be an adequate alterative forum—indeed, he concedes that "the [C]ourts of England and Wales are no doubt competent to adjudicate civil disputes in general[.]" Response at 2. The first factor thus favors dismissal.

*Second*, the public-interest factors likewise favor dismissal. The relevant public-interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial . . . in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Boyd*, 2024 WL 940822, at *9 (cleaned up) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). When weighing these factors, "the burden is on the plaintiff to

show that dismissal of the complaint is unwarranted." *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 964 (11th Cir. 2014).

Bagga doesn't even try to meet his burden of showing that the public-interest factors favor litigating this case in Florida. *See generally* Response (silent as to public-interest factors). RCCL, on the other hand, claims that "[t]his dispute has little, if any, connection to the Southern District of Florida: [Bagga] is a citizen and resident of Canada, the Icon of the Seas is a Bahamas-flagged vessel owned by a Liberian entity, and the incident is alleged to have occurred while the vessel was in navigable waters of the Western Caribbean, not in Florida." Reply at 7. RCCL also tells us that "the Ticket Contract's choice-of-law clause designat[es] English law" as governing the parties' dispute—a contention Bagga doesn't dispute. Motion at 7; *see also* Iyer Decl. ¶ 10 ("The [T]icket [C]ontract was subject to an exclusive English law and jurisdiction of the Courts of England and Wales clause [ ] otherwise known as a forum selection and choice of law clause."); *id.* ¶ 11 (attaching choice-of-law clause specifying that English law will govern all disputes arising from or related to the Ticket Contract).

After careful consideration, we agree with RCCL that the balance of public-interest factors weigh in favor of dismissal. *First*, even though neither party provided information regarding the comparative administrative congestion between the Courts of England and Wales and the Southern District of Florida, we know that the Southern District of Florida is one of the busiest and most congested court systems in the country. *See Gordon v. Sandal Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1142 (S.D. Fla. 2019) (Scola, J.) ("[T]he Southern District of Florida has one of the busiest dockets in the country[.]"). It's therefore unlikely that Bagga would face more congestion in England than in Florida. *See Aviation One of Fla., Inc. v. Airborne Ins. Consultants*, 722 F. App'x 870, 885 (11th Cir. 2018) (affirming dismissal where district court found that "it was unlikely that [the appellant] would face more congestion in England than in Florida"). *Second*, the "local interest in having localized controversies decided at home," *id.* at 885, is at best neutral, since neither party resides in Florida and

Bagga's injuries didn't occur here. *Third*, the Courts of England and Wales are undoubtedly more familiar than we are with English law, which will govern this dispute. *See ibid.* ("[T]he court determined that the last factor favored litigation in England because the retainer agreement included a choice-of-law provision designating English law, with which English courts would obviously be more familiar. Based on this analysis, the court concluded that the public-interest factors failed to overcome the weight of the forum-selection clause, making dismissal appropriate."). *Fourth*, the Courts of England and Wales have a strong public interest in hearing cases the parties have agreed to litigate in those courts. *See Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1328 (S.D. Fla. 2016) (Gayles, J.) ("China has a stronger interest in having this dispute litigated in its courts, as the parties contracted to litigate in China[.]"). And *fifth*, RCCL's English solicitor tells us that "trials of civil claims in England and Wales, including personal injury claims, take place before a judge sitting without a jury," thus obviating any concern we might have about burdening an English jury with this dispute. Iyer Decl. ¶ 18. For the foregoing reasons, and because Bagga hasn't advanced *any* argument on the public-interest factors, we find that the public-interest factors favor dismissal.

Finally, we find that Bagga "can reinstate his suit in the alternative forum without undue inconvenience or prejudice," *Leon*, 251 F.3d at 1311, because "RCCL has agreed to waive any statute-of-limitations defense arising from the Ticket Contract's one-year suit-filing deadline, provided Plaintiff refiles his action in the Courts of England and Wales within six months of any order of dismissal," Reply at 7–8.

* * * *

The upshot is that "the existence of a valid and enforceable forum-selection clause is essentially dispositive in the *forum non conveniens* analysis." *Usme*, 106 F.4th at 1086. To overcome the forum-selection clause, Bagga bore the burden "to show that dismissal of the complaint is unwarranted" based on certain public interest factors. *See Pappas*, 585 F. App'x at 964. He didn't carry

that burden. He didn't even try. Bagga's Response addressed only the enforceability of the forum-selection clause and never meaningfully addressed *forum non conveniens*. *See* Response at 2 (mentioning "*forum non conveniens*" only once). This failure warrants dismissal.

## CONCLUSION

Because the parties agreed to an enforceable forum-selection clause requiring disputes to be litigated in the Courts of England and Wales, we dismiss Bagga's Complaint under the doctrine of *forum non conveniens*. Accordingly, we **ORDER** and **ADJUDGE** as follows:

1. The Motion to Dismiss [ECF No. 13] is **GRANTED**.
2. The Complaint [ECF No. 1] is **DISMISSED** *without prejudice*.
3. The Clerk is directed to **CLOSE** this case. All pending deadlines are **TERMINATED** and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on September 14, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record